IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ALEXANDER ERIC PIERCE, <br> BOP No. 69701-510, <br><br> Plaintiff, <br><br> v. <br><br> LUBBOCK POLICE DEPARTMENT, *et al.*, <br><br> Defendants. | §§§§§§§§§§§§§ | 5:24-CV-83-BR |

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

Proceeding pro se and *in forma pauperis*, Plaintiff Alexander Eric Pierce ("Pierce") has filed this action under 42 U.S.C. § 1983, claiming violations of his constitutional rights arising during his March 19, 2023, arrest. (ECF 1). Pierce filed his Complaint on March 29, 2024, and the United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. (ECF 1, 10). Pierce has consented to proceed before the undersigned Magistrate Judge. (ECF 7). After considering the allegations in Pierce's Complaint, his responses to the Court's questionnaire, authenticated records provided by Lubbock County, and applicable law, the Court concludes that Pierce's claims must be DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), for the reasons stated below.

**I. STANDARD OF REVIEW**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b)

(applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs still must plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Legal Analysis

**A.    Factual Background.**[1]

Pierce's Complaint states that, on March 19, 2023, Pierce was shopping in a WalMart store in Lubbock, Texas, where he was abruptly tackled in an aisle by Defendant Michael Taylor

---

[1] These background facts are taken from Plaintiff's Complaint (ECF 1) and questionnaire responses (ECF 17), and are assumed to be true for the purpose of evaluating the merits of Plaintiff's causes of action.

("Taylor") of the Lubbock Police Department ("LPD"). (ECF 1 at 6). He contends that Taylor threw him to the ground, jumped on his back, and proceeded to tase him repeatedly. (*Id.*). At that time, Defendant LPD Officer Jonathan Ortiz ("Ortiz") put his knee on Pierce's neck and "started punching him in the face and all over his head." (*Id.*) Pierce tried to cover his head as Taylor continued to tase him and Ortiz continued to punch him. He claims that Defendant LPD officer Jasmine Garcia ("Garcia") failed to intervene after she arrived on the scene. (*Id.*).

The police report attached to Pierce's Complaint provides additional details.[2] The report states that Pierce was observed by security removing a saw blade, knife and pair of pliers from their packaging and concealing them on his person, which Pierce does not dispute. (*Id.* at 7; ECF 17 at 4).[3] As Officer John Murray ("Murray") approached Pierce, Pierce immediately fled. When Pierce attempted to run by Taylor, Taylor "grabbed" Pierce and "took [him] to the ground." (ECF 1 at 7). The report states that Pierce refused orders to put his hands behind his back, that he resisted arrest, and there was a struggle to place Pierce in handcuffs.[4] (*Id.*) Murray suffered an injury during the struggle. (*Id.*). After Pierce was cuffed and removed to a back office in WalMart, he initially

---

[2]Courts are permitted to consider attachments to the complaint when conducting the screening process pursuant to § 1915(e)(2)(B) because, in determining whether a plaintiff failed to state a claim, courts utilize the same standard as is used to analyze a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Lewis v. Guillot*, 583 F. App'x 332 (5th Cir. 2014); *see also Brown Morgan v. City of Fort Worth, Tex.*, 2013 WL 3196580 (N.D. Tex. June 25, 2013); *Brown v. Temple*, 2013 WL 1335750 (M.D. La. April 1, 2013).

[3]Page citations to Pierce's questionnaire responses refer to the electronic page number assigned by the Court's electronic filing system.

[4]Pierce admits in his questionnaire responses that he had removed the blade, knife and pliers from their packaging and concealed them on his person, but states that he left the packaging in the cart. He states that he was charging his cell phone with an external charger in the cart, with the intention of adding money to his WalMart app in order to pay for the items. He admits, however, that he began to run from the officers because he was aware he was behind on payments for tickets. He said he was tackled before he "could also abandon the pliers in [his] pocket." He states that he was tackled by Taylor, and that, while he was on the ground being tased and punched, he "was panicking and trying to cover [his] face." (ECF 17 at 5, 6).

refused to identify himself, but later provided a fictitious name and date of birth, which again Pierce does not dispute. (*Id*.; ECF 17 at 7). During transport to the Lubbock County Detention Center ("LCDC"), Pierce attempted to slip out of his handcuffs, causing transport to be halted while Pierce was re-cuffed.[5] At LCDC, Pierce gave his true name and officers discovered there were outstanding warrants for his arrest. (ECF 1 at 7). Pierce ultimately was charged with the following crimes: (1) robbery, (2) tampering with/fabricating physical evidence with intent to impair, (3) evading arrest detention, (4) resisting arrest search or transport, and (5) failure to ID fugitive intent/give false information. Pierce asserts that a grand jury refused to indict him on the charges, so they were dismissed.

Pierce filed this lawsuit on March 29, 2024, claiming that Taylor and Ortiz used excessive force when arresting him, and that Garcia failed to intervene in the unlawful use of force. (ECF 1). Although Murray was not named in the Complaint, Pierce stated in his questionnaire responses that he wished to add Murray to the excessive force claim, although he does not recall what, if anything, Murray did. (ECF 17 at 2-4).

**B.     Claims Against Defendants in Their Official Capacities.**

Pierce states that he is suing Defendants in their individual and official capacities. (ECF 17 at 4). Claims for money damages against Defendants in their official capacities are without merit in that they are simply another way of suing Lubbock County, and, therefore, the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). It is well established that suits for monetary damages against state officials in

---

[5]Pierce does not dispute this, but states that he was experiencing "extreme fentanyl withdrawal symptoms" which caused intense cramping in his arms and legs, so he was trying to move into a position that did not hurt. (ECF 17 at 7).

their official capacities cannot succeed under Section 1983. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892-95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). In addition, state officials acting in their official capacities are not "persons" under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Therefore, the claims against Defendants in their official capacities are dismissed.

C.  **Claim Against Lubbock Police Department.**

Pierce names LPD as a Defendant. (ECF 1). Because LPD is a non-jural entity, however, Pierce cannot allege an actionable claim against it. "Federal courts in Texas have uniformly held that entities without a separate jural existence are not subject to suit." *Torti v. Hughes*, No. 3:07-CV-1476-M, 2007 WL 4403983, at *2 (N.D. Tex. Dec. 17, 2007); *see Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) ("In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority.'" (quoting *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991))).

LPD, as a police department, is not a separate jural entity subject to suit. *See, e.g., Darby*, 939 F.2d at 313 (explaining that a political subdivision such as a police department only has the capacity to be sued if it "enjoy[s] a separate legal existence" (quoting *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill 1979))); *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993) (dismissing plaintiff's claims against the Houston Police Department because it "lacks legal existence and the capacity to be sued"). Pierce pleads no facts demonstrating a grant of jural authority to LPD. In addition, LPD is not liable for the actions of its employees because 42 U.S.C.

§ 1983 does not impose vicarious liability. *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988). In his questionnaire, Pierce was warned that LPD was a non-jural entity and he needed to name proper jural defendants. (ECF 17 at 3). In his response, Pierce added Murray to this lawsuit. (*Id*.). Because LPD is a non-jural entity, the Court dismisses all claims against LPD as frivolous.

**D.    Excessive Force Claim Against Defendants Taylor, Murray and Ortiz.**

Pierce alleges that Taylor, Murray and Ortiz used excessive force when arresting him. Pierce's use of force claim arises under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Today we make explicit what [has been] implicit ... and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...."); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (holding that plaintiff asserted a valid Fourth Amendment claim where he alleged defendant maliciously choked him after arresting plaintiff and searching his vehicle, but prior to transporting him to jail). To sufficiently state an excessive force claim, an arrestee such as Pierce must demonstrate that he suffered: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).

**1.    Injury and Causation.**

An arrestee must allege more than *de minimis* injury to justify an excessive force finding, and the injury "must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams*, 180 F.3d at 703). The injury requirement is "a sliding scale, not a hard cutoff." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022)

(quoting *Buehler v. Dear,* 27 F.4th 969, 982 (5th Cir. 2022). This approach treats the degree of injury—even if minor—as interrelated to the reasonableness and excessiveness of the officer's force. "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Solis*, 31 F.4th at 981 (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). Accordingly, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (per curiam). "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* at 79; *see also Solis*, 31 F.4th at 972. This means that if the officer's force was unreasonably excessive, Pierce need only show "some injury." He alleges that, as a result of the use of force, he had to have one tooth pulled, lost two fillings (one in the extracted tooth) and received approximately 1.5 years of medication and treatment for post-traumatic stress. (ECF 17 at 8-9). While Pierce claims to have been in severe pain during the use of force, he alleges no other injuries lasting beyond the initial incident.

Pierce must allege facts showing that each Defendant violated his civil rights on an individual basis rather than as a collective action. *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007); *see also Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999) (holding that each defendant's actions in a Section 1983 case must be considered individually). Pierce makes no specific factual allegations against Murray, beyond noting that Murray was injured in the incident. (ECF 1 at 7; ECF 17 at 2). He alleges that Ortiz hit him in the head, which could have caused the injuries to Pierce's mouth. While it is unlikely that sitting on Pierce's back and deploying a taser

7

caused Pierce to lose a tooth and fillings, it is conceivable that Taylor could have caused the injuries by his initial tackle of Pierce. Therefore, in construing Pierce's factual allegations liberally during the screening process, the Court finds that Pierce has sufficiently alleged "some injury" against Taylor, Ortiz and Murray individually for the purposes of his excessive force claim.

      **2.    Defendants' Actions Were Objectively Reasonable.**

The Court next must determine if the acts of Taylor, Ortiz and Murray were objectively reasonable. "The objective reasonableness of the force ... depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). In evaluating the objective reasonableness of an officer's use of force, courts consider the following nonexclusive criteria, known as the *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darden v. City of Fort Worth*, 880 F.3d 722, 728-29 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).

      **a.    Severity of the Crime.**

The first *Graham* factor, considered alone, supports a finding that the force applied by Defendants Taylor, Murray and Ortiz was excessive. Although Pierce's subsequent actions—including fleeing from the officers—escalated the gravity of the circumstances surrounding the incident and the degree of force appropriate under those conditions, Pierce initially was, at most, a shoplifting suspect. *See, e.g., Brown*, 524 F. App'x at 80 (applying *Graham* factors and noting that first factor favored plaintiff, where defendant detained him on "suspicion that he had sold marijuana on some prior date—not a trivial offense, but also not one to put any person in real or immediate danger"); *Molina v. Collin Cnty.*, No. 4:17-CV-00017, 2017 WL 5441833, at *3 (E.D.

Tex. Nov. 14, 2017) (concluding the first *Graham* factor favored arrestee, where officers had not witnessed him commit a crime and arrestee was merely a suspect to a crime). Out of an abundance of caution and construing the facts in Pierce's favor, the Court finds that the first *Graham* factor favors Pierce, despite the fact that he was seen by security pocketing items that could be used as weapons.

      **b.**      **Immediate safety threat.**

Defendants were told that Pierce was seen hiding a knife, a saw blade and pliers on his person, so it was eminently reasonable to believe that he posed an immediate threat to their safety, especially considering his immediate attempt to evade them and run towards Taylor such that Taylor was able to "take him down". (ECF 1 at 7). *See Breland v. City of Wiggins*, No. 1:17cv276-HSO-JCG, 2019 WL 1281249, at *9 (S.D. Miss. Mar. 20, 2019) (finding that defendant had objectively reasonable grounds to believe plaintiff posed an immediate threat to officers' safety, where plaintiff dug through pockets of jacket, which had not been searched, and actively resisted defendant's efforts to confiscate and search the jacket). The second *Graham* factor weighs in Defendants' favor.

      **c.**      **Resisting arrest.**

It is undisputed that Pierce began running as soon as he saw Murray starting to approach him. (ECF 1 at 7; ECF 17 at 5). The apprehension of a fleeing suspect necessarily involves some degree of physical contact. *Bush*, 513 F.3d at 502 (observing that "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" (internal quotation marks and citation omitted)). Moreover, due to Pierce's flight and resistance, officers had not been able to determine whether Pierce still possessed the knife and saw blade he was seen concealing, thereby posing a risk to officer safety and providing further

justification for the use of some degree of force. *See, e.g., Studzinski v. City of Austin*, No. A-19-CV-709-ML, 2020 WL 8674122, at *7 (W.D. Tex. Dec. 28, 2020) (weighing *Graham* factors in determining whether use of force was constitutionally unreasonable, including the fact that the suspect had not been searched and was suspected of having a weapon). "Officers may consider a suspect's refusal to comply with instructions … in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

Pierce alleges that Taylor tackled him, sat on his back and tased him five or six times. He claims that Ortiz punched him in the head numerous times, and that Murray was somehow involved. (ECF 17 at 3, 6). He asserts that he "was in a frightened state… could barely breathe, and [was] in incredible pain." (*Id.*). Pierce's brief difficulty breathing as Taylor allegedly used his body weight to hold Pierce down for handcuffing is insufficient to demonstrate an objectively unreasonable use of force. *See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 906 n.11 (4th Cir. 2016) ("Applying just enough weight to immobilize an individual continuing to struggle during handcuffing is not excessive force." (internal quotation marks and alterations omitted)); *Geba v. Norris*, No. 2:14cv612, 2016 WL 8730898, at *5-6 (E.D. Va. Apr. 4, 2016) (finding plaintiff's allegation that defendant tackled her and sat on her back while handcuffing her after she attempted to flee, resulting in difficulty breathing, did not state sufficient excessive force claim). While the Court recognizes that breathing trouble may qualify as a stand-alone injury, it is insufficient under these circumstances to sustain Pierce's excessive force claim against Taylor. *See, e.g., Williams*, 180 F.3d at 704 (finding no cognizable injury, and therefore no constitutional violation, when suspect's dizziness and temporary inability to breath or swallow occurred incident to being choked during a search of his mouth for contraband).

Nor did use of a taser by Taylor constitute excessive force. The "question of whether [use of] a taser constitutes excessive force ... turns on whether the taser is used while the suspect is resisting, as opposed to when the suspect is either not resisting or has ceased resisting." *Pratt v. Harris Cnty.*, 2015 WL 224945, at *10 (S.D. Tex. Jan. 15, 2015). As such, "force, including the use of a taser, is often appropriate … when the arrestee is resisting or violent." *Id*. (citing *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012)). In *Poole*, the court also noted that the "situation was 'tense, uncertain, and rapidly evolving,' and the officers' decision to use force to restrain Poole was objectively reasonable. *Id*. (citing *Graham*, 490 U.S. at 396). The Fifth Circuit further reasoned that Poole posed an immediate threat to the officers' safety and was actively resisting the officer's instruction by failing to turn around and be handcuffed. *Id.* Similarly, here, the situation was "tense, uncertain, and rapidly evolving." Pierce admits he was using his arms to fend off Ortiz, rather than complying with Defendants' orders to submit to handcuffs. The "great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest" for purposes of Texas Penal Code § 38.03(a)—and, it stands to reason, for purposes of excessive-force analysis." *Buehler*, 27 F.4th at 984. Therefore, it is not objectively unreasonable that Defendants believed Pierce to be resisting their instructions and their efforts to handcuff him as he attempted to fight off Taylor and Ortiz. In addition, there is no allegation that any of the Defendants continued applying force after Pierce was handcuffed.

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-

97. Pierce admits that he immediately ran from officers and fought them as they attempted to subdue him. On the facts alleged, Pierce has wholly failed to demonstrate that the use of force while handcuffing him (a suspect who had fled from officers and was known to have a weapon) was excessive to the need and that rises to the level of an actionable constitutional claim. *Williams*, 180 F.3d at 704. The Court therefore dismisses Pierce's use of force claim against Defendants Taylor, Murray and Ortiz for failure to state a claim.

E.   **Bystander Liability Claim Against Garcia.**

Pierce brings a bystander liability claim against Garcia, alleging that she failed to protect him from the above-described actions of Taylor, Murray and Ortiz. Specifically, he states that she "did not discourage or reprimand their behavior in any way." (ECF 17 at 1). He further alleges that she "approved" charges against him that later were dropped. (*Id.*).

The theory of bystander liability applies to Section 1983 claims for use of excessive force against a pretrial detainee. *See, e.g., Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014). To prevail on a theory of bystander liability, Pierce must show that Garcia "(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).

Pierce cannot prevail on a theory of bystander liability because he does not allege facts showing that Garcia knew that the other Defendants were violating Pierce's rights. Further, as shown above, Pierce has not alleged a constitutional violation by the other Defendants. As a result, he cannot prevail on a bystander liability claim against Garcia. It follows that an officer cannot be held liable on a theory of bystander liability if the third party's actions that he failed to prevent do

not, themselves, amount to a constitutional rights violation. *See Griffin v. City of Sugarland*, 787 F. App'x 244, 245 (5th Cir. 2019) ("[B]ecause there was no violation of his constitutional rights, [the plaintiff's] bystander liability theory also fails." (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)). Lastly, Pierce has alleged no facts showing that Garcia (1) had the authority to approve the charges against him; (2) that she, in fact, did so;[6] or (3) that merely "approving charges" violates his constitutional rights. Accordingly, Pierce's claims against Garcia are hereby dismissed for failure to state a claim.

### III. Conclusion

For the foregoing reasons it is, therefore, ORDERED that Pierce's Complaint and all claims therein are DISMISSED with prejudice as frivolous and for failure to state a claim in accordance with 28 U.S.C. §§ 1915 and 1915A.

This is a consent case assigned to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c) with authority to enter judgment. This dismissal shall count as a qualifying dismissal or "strike" under 28 U.S.C. § 1915 and *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996). *See Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1723 (2020). Any appeal shall be to the Court of Appeals for the Fifth Circuit under 28 U.S.C. § 636(c)(3).

Judgment shall be entered accordingly.

IT IS SO ORDERED.

ENTERED on February 20, 2025.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

---

[6]The report provided by Pierce shows that Taylor, rather than Garcia, determined the charges. (ECF 1 at 7).